**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MICHAEL A. FISCHER,

    Plaintiff,

v.                                                                No. CV 12-0673 JCH/CG

PETER LARAIA, ET AL.,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on *Defendants Deming and Laraia's Motion to Dismiss* ("Motion"), filed on October 4, 2013, (Doc. 73), joined by Defendant Cody Dunning on October 7, 2013, (Doc. 75); Plaintiff's three responsive documents (collectively "Response"), filed on October 15 and 23, 2013,[1] (Docs. 75, 76, 77); and *Defendants Deming and Laraia's Reply in Support of Motion to Dismiss* ("Reply"), filed on October 24, 2013, (Doc. 79). The Motion has been referred to the undersigned by the Honorable Judith C. Herrera, United States District Judge, for analysis and a recommended disposition. (Doc. 98).

In their Motion, Defendants request that the Court dismiss all claims against them with prejudice pursuant to Fed. R. Civ. P. 37(b) because Plaintiff refuses to comply with this Court's discovery orders that he release his medical records to Defendants. (Doc. 73 at 2). The Court issued an *Order to Show Cause* on November 7, 2013. (Doc. 86).

---

[1] Petitioner is a *pro se* litigant. His pleadings must be construed liberally and held to a less stringent standard than is required of a party represented by counsel. *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . ." *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). Therefore, the Court will grant Plaintiff leave to file several responsive documents to Defendants' Motion.

Plaintiff responded in his *Order to Respond to Cause*, (Doc. 90), and also filed eight other documents reiterating his position that Defendants are not entitled to his medical records as ordered. (Docs. 87, 88, 89, 94, 95, 96, 97, 101). The Court recommends that the Motion be granted and all of Plaintiff's claims be dismissed with prejudice.

## I.     Background

Plaintiff was incarcerated at Western New Mexico Correctional Facility ("WNMCF") in Grants, New Mexico.[2] (Doc. 1 at 1). He initially claimed that while he was an inmate at WNMCF, Defendant Deming, a physician practicing medicine at WNMCF, and Defendant Dunning, an officer at WNMCF, along with other defendants previously dismissed from this lawsuit, (Doc. 46), were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. (Doc. 1 at 2). Plaintiff filed his Amended Complaint on December 26, 2012, adding Defendant Laraia, Health Services Administrator at WNMCF, as a Defendant in the case. (Doc. 43). All of the events giving rise to this lawsuit took place while he was incarcerated at WNMCF. (Doc. 43 at 2).

In this case, Plaintiff's only claim is that Defendants have been deliberately indifferent to his serious medical needs by arbitrarily refusing him medical treatment associated with the management of his diabetes. (Doc. 1 at 2-3; Doc. 43 at 2-3). Plaintiff alleges that when he entered the prison system, he informed WNMCF staff that he suffered from diabetes and needed special treatment. (Doc. 88 at 3). Plaintiff has alleged that Defendants failed to provide him with an oxygen machine, diabetic shoes, diabetic hose, wheelchair transport to and from the infirmary, appointments with foot

---

[2] Plaintiff claims that he entered the New Mexico prison system on either March 9, 2011 or April 19, 2011. (Doc. 72 at 1; Doc. 88 at 3).

specialists, and regular physician appointments necessary for Plaintiff's maintenance and treatment of his diabetic condition. (Doc. 43 at 2–3). Plaintiff indicates his condition existed prior to his incarceration at WNMCF, and his treatment plan should have been based off his "VA records." (Doc. 43 at 2). He also suggests that the reason he was transferred from WNMCF to Central New Mexico Correctional Facility ("CNMCF") in Los Lunas, New Mexico was so that he could receive specialist care for his diabetes. (Doc. 90 at 2).

    A.    <u>Discovery Orders</u>

        1.    *Order for* Martinez *Report*

On July 25, 2013, the Court entered an *Order for Personal Service of Process, Initial* Martinez *Report, and Denying Motions to Appoint Counsel* ("Order for *Martinez* Report"), whereby Defendants were ordered to submit a *Martinez* Report by September 25, 2013. (Doc. 59). The Court also denied Plaintiff's requests to "order [the] release of [his] medical records [dated] April 19, 2011 [through January 2012]" directly to him (Doc. 51), and protect his medical records from discovery by Defendants. (Doc. 59 at 4) (citing Docs. 51, 52).

The Court explained that under the Rules, in cases where the physical or mental medical condition of a party is an issue, that party must authorize his healthcare providers to release his medical records to the other party for use in supporting its claims or defenses. (Doc. 59 at 4) (citing D.N.M.LR-Civ. 26.3(d)). The Court further stated that the purpose of a *Martinez* Report is to "develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims," and that the Court "may order a defendant to investigate the incident or incidents underlying

a lawsuit and to submit a report in order to develop a factual or legal basis for determining whether Plaintiff has a meritorious claim." (Doc. 59 at 4) (citations omitted).

The Court held that since Plaintiff had made his physical health and quality of medical care while incarcerated the sole issue in this case, he cannot successfully withhold his medical records on the basis they are irrelevant to his claims of Defendants' deliberate indifference. (Doc. 59 at 4). Plaintiff was ordered to provide Defendants with access to his medical records, so that Defendants could comply with the various requirements of the *Martinez* Report.[3] (Doc. 59 at 6). Therefore it was explained to the parties that Defendants would provide the Court and Plaintiff with Plaintiff's relevant medical records in the *Martinez* Report. (Doc. 59).

### 2. Order Compelling Plaintiff's Medical Authorization

Defendants Donna Deming and Peter Laraia subsequently filed their *Motion to Compel Plaintiff's Medical Authorization and Extend the* Martinez *Report Deadline* ("Motion to Compel"), on August 20, 2013. (Doc. 64). Defendants moved the Court to compel Plaintiff to sign a medical authorization that would allow them access to Plaintiff's medical records from "2009 to present day." (Doc. 64 at Ex. B). Defendants alleged that Plaintiff had refused to sign and return the medical release. (Doc. 64 at 2).

Plaintiff responded that he should be allowed to view his own medical records before he signs a medical authorization releasing his records to Defendants, and asked the Court to order his medical care providers to produce the records directly to him or order his release from prison to inspect his records. (Docs. 60, 63, 66, 67). He also complained that it was unconstitutional for the health service providers to ask him to pay

---

[3] The Court ordered Defendants to provide a *Martinez* report that included records and documents relating to Plaintiff's medical needs, treatment, and claims, specifically including, but not limited to, "the period of his incarceration at CNMCF and WNMCF." (Doc. 59 at 5–7).

4

for copies of his medical records. (Doc. 67 at 4). Plaintiff claimed that Defendants were tampering with his medical records, (Doc. 63 at 2), but failed to provide any facts to support that allegation.

The Court granted Defendants' Motion to Compel, and ordered Plaintiff to provide Defendants with access to his medical records by September 30, 2013. (Doc. 69 at 4). The Court held that Plaintiff had failed to show good cause why the Court should compel his medical records from his health-service providers at no cost to him, or allow him to inspect his own records at this stage in the litigation. (Doc. 69 at 2). For good measure, the Court again explained the purpose of the *Martinez* Report in prisoner litigation, and Plaintiff's responsibility to cooperate so the case could proceed. (Doc. 69 at 3). The Court also vacated the deadlines set forth in the Order for *Martinez* Report, and stated it would enter a new briefing schedule once Plaintiff provided full access to his medical records. (Doc. 69 at 4–5).

### 3. Motion to Dismiss

On September 25, 2013, Plaintiff filed another document requesting that he be allowed to see his own medical records.[4] (Doc. 72). He also attached an executed copy of the second page of the medical authorization form, but wrote on the form that he was limiting access to his medical records to the time period "2011-March-Jan[ua]ry 2012" that he was not in prison in 2009.[5] (Doc. 72 at 4). The Court interprets Plaintiff's act as

---

[4] He cites "Legal Form Rule 29.3 Local Rule for Civil Cases U.S. District Court for Eastern District" for support that he is entitled to see his own medical records. (Doc. 72 at 1). The Court has reviewed the Local Rules of the U.S. District Court of New Mexico, and no such rule exists.
[5] Plaintiff provided the Court with the following explanation: "[t]hey likely 2011-2012 medical record own company VA stuff in their. Ask Court to order see own record. I didn't get prison March 9, 2011 . . . . I send this to Court so see written check 2011-2012 Jan[u]ary maybe C order for I can my own record look through my file." (Doc. 72 at 1, 2).

restricting discovery of his medical records to only the time period he was incarcerated in WNMCF.

Defendants subsequently filed this Motion, requesting the Court enter an Order dismissing Plaintiff's claims with prejudice, pursuant to Fed. R. Civ. P. 37(b), for Plaintiff's failure to fully execute and return the medical authorization. (Doc. 73). Defendants point out that Plaintiff has been provided with the medical authorization three times, and ordered to provide a full medical release twice by the Court. (Doc. 73 at 4). Defendants submitted a letter sent to their attorneys by Plaintiff dated September 30, 2013, wherein Plaintiff implies that he did not give a full release because he was not in prison in 2009 and he provided all of his medical records from 2010 to the Court.[6] (Doc. 72 at Ex. D. at 1).

Plaintiff filed three documents during the response period provided by Local Rule 7.4. (Docs. 75, 76, 77). In those documents, Plaintiff again cites to a non-existent local rule for support that he has a right to see his own medical records at no cost, contends that Defendants' attorneys are trying to "bully" him, and claims he has done his part to help Defendants. (Docs. 75, 76, 77).

Defendants reply that what Plaintiff filed with the Court does not allow them to successfully request his medical records, even for the restricted time period. (Doc. 79 at 2). Defendants state that there are several blank spaces on the first page of the medical authorization that Plaintiff needs to complete and submit, including provisions that require his initials, and a section where his social security and birth date are required.

---

[6] The Court acknowledges that Plaintiff has filed numerous documents with the Court, a handful of which appear to be medical records from the relevant time period. However, the Court what has been filed is not comprehensive enough to capture all of Plaintiff's relevant medical records necessary to comply with the Court's previous discovery orders.

(Doc. 79 at 2). Defendants contend that they are not bullying Plaintiff, but are attempting to comply with the Court's orders and pursue their right to discovery. (Doc. 79 at 2). Defendants allege that it is clear that Plaintiff disagrees with Defendants' right to access his medical records. (Doc. 79 at 2–3).

### 4. *Order to Show Cause*

The Court entered an *Order to Show Cause* to Plaintiff's Motion on November 7, 2013. (Doc. 86). The Court warned Plaintiff that the allegations in the Motion, if true, provide a basis upon which Plaintiff may be subject to sanctions under Fed. R. Civ. P. 37, including dismissal of the case with prejudice. (Doc. 86 at 2). Plaintiff was ordered to show cause as to why he should not be sanctioned for failing to comply with the Court's discovery orders by November 18, 2013. (Doc. 86 at 2).

Plaintiff subsequently filed the *Order to Response to Cause*, which the Court construes as his response to the *Order to Show Cause*. (Doc. 90). Plaintiff again asserts that he has provided the 2010 medical records to Defendants through various Court filings, he already signed the medical authorization and filed it with the Court, and Defendants are the ones in violation of the Court's orders because they have not submitted a *Martinez* report. (Doc. 90 at 1). He further contends that he is doing what the Court has asked of him, and again demands to see his own medical records at no charge. (Doc. 90 at 2).

## II. Analysis

The Federal Rules of Civil Procedure provide the Court with "ample tools to deal with recalcitrant litigants." *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993). Determination of the appropriate sanction for a discovery violation is a fact-specific

inquiry, and one that a district court is best qualified to make. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). A court may dismiss an action "[i]f a party . . . fails to obey an order to provide or permit discovery . . . ." FED. R. CIV. P. 37(b)(2)(A)(v). Dismissal is a drastic sanction "appropriate only in cases of willful misconduct." *Erenhaus*, 965 F.2d at 920.

Before dismissing a case under Rule 37, a court should consider the following factors: (i) the degree of actual prejudice to the defendant; (ii) the amount of interference with the judicial process; (iii) the culpability of the litigant; (iv) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (v) the efficacy of lesser sanctions. *See id*. at 921(citations, internal quotation marks, and ellipsis omitted). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Id.* at 921 (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1521 n.7 (10th Cir. 1988)).

The first *Ehrenhaus* factor favors dismissal. Five months have elapsed since the Court first ordered Plaintiff to release his medical records to Defendants. Now Plaintiff has moved for summary judgment on his claims, (Doc. 80), and because Defendants have not been given an opportunity to discover any pertinent information as to Plaintiff's medical condition and treatment they are unable to meaningfully respond to Plaintiff's motion.[7] (Doc. 84 at 2).

Further, Plaintiff has made unsupported allegations against Defendants that they were deliberately indifferent to his serious medical needs, and may be tampering with

---

[7] Plaintiff's *Motion for Judgement* (sic) was filed on October 24, 2013. (Doc. 80). The Court has reviewed the content of that motion, and subsequent filings by Plaintiff in support of that motion, and interprets it to be a request for summary judgment on all of his claims.

evidence to avoid responsibility. In *Ehrenhaus*, the Court acknowledged that serious and stigmatizing allegations in a lawsuit affect the reputation of the accused as long as the lawsuit is pending. *Ehrenhaus*, 965 F.2d at 921. Therefore, the Court finds that Defendants have been adversely affected by Plaintiff's actions because Defendants have been unable to proceed with defending themselves in this case.

Consideration of the second *Ehrenhaus* factor also favors dismissal. Plaintiff's obstinacy has adversely affected the Court's ability to manage its docket and minimize unnecessary burdens on the Court. If a litigant "could ignore court orders . . . without suffering the consequences, then [the court] could not administer orderly justice, and the result would be chaos." *Id.* (internal quotation marks omitted). The Court has had to monitor this case closely due to the numerous, and oftentimes incomprehensible, filings that Plaintiff has submitted in this case.[8] The Tenth Circuit has recognized that the courts are prejudiced by having to respond to wordy and unwieldy pleadings. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162–63 (10th Cir. 2007). The Court finds that Plaintiff has effectively stalled this case from progressing by flouting the Court's direct and specific orders, wasting judicial resources.

Analysis of the facts under the third *Ehrenhaus* factor, the litigants' culpability, further supports dismissal. The Court finds that Plaintiff has acted willfully or in bad faith in refusing to cooperate. Plaintiff was ordered to provide Defendants with access to his medical records twice, and has been given five months to comply with those orders.

---

[8] For example, in a more recent filing, Plaintiff writes that "[t]he Eighth Amendment does not apply to who cannot be punished at all (at least in theory) under the due process clause, however, conditions or restrictions are not considered reasonably request Eihger medical records files Martinez report didn't do so." (Doc. 96 At 2) (emphasis not included).

Plaintiff has been provided the medical authorization multiple times and has failed to completely fill out the form.

The Court has ruled on Plaintiff's various motions for appointment of legal counsel and legal access, and his requests to inspect his records. (Docs. 59, 69). Yet, Plaintiff entirely ignores the Court's rulings and re-urges his requests, insisting that his motions are unresolved. (Docs. 72, 74, 81, 87, 88, 89, 90, 101, 102, 103). The Court has considered that Plaintiff does not understand the Court's order to sign a full release of his medical records. Since the Court issued its Order for *Martinez* Report, Plaintiff has filed at least eighteen documents with the Court, either directly responding to Defendants' Motion to Dismiss or the Court's *Order to Show Cause* or filing new motions with the Court. Plaintiff has consistently refused to execute a full medical release and maintained he should not have to do so. The evidence shows that Plaintiff has not abandoned this case or failed to receive or comprehend the Court's orders— rather, Plaintiff is simply ignoring the Court's orders.

Plaintiff withholds his medical records on several bases, including that Defendants are only entitled to his medical records during the period he was incarcerated in WNMCF. However, Plaintiff's Eighth Amendment claims hinge on allegations that his serious medical condition existed prior to his entry into WNMCF, and was left untreated by Defendants upon entry into the facility. Further, his medical treatment subsequent to his incarceration at WNMCF is relevant, insofar as it would show whether Plaintiff suffered the future harm that he has alleged. (Doc. 94). Therefore, the evidence shows that Plaintiff is willfully frustrating the discovery process by withholding information that is entirely relevant to his claims.

With regards to the fourth *Ehrenhaus* factor, the Court explicitly warned Plaintiff that failure to comply with the previous discovery orders could lead to dismissal of his case. On November 7, 2013 the Court stated in the *Order to Show Cause*:

> Defendants' Motion for Sanctions details a pattern of uncooperative and non-compliant behavior on the part of Plaintiff. Specifically, Defendants allege that Plaintiff has failed to comply with two of this Court's orders to execute a full medical release. (Docs. 59, 69). If true, Defendants' allegations provide a basis upon which Plaintiff may be subject to sanctions under Rule 37, including dismissal of his case with prejudice.

(Doc. 86 at 2). Since entering the *Order to Show Cause*, the Court has waited over six weeks to give Plaintiff another opportunity to comply with the Court's orders. Instead of executing a full release of his medical records, Plaintiff responded that Defendants already have his medical records, that he is being bullied, and he wants the Court to subpoena his medical records from his health-service providers at no cost for his own review. (Doc. 90). The Court finds Plaintiff's arguments to be unpersuasive, in light of the Court's earlier explanations as to purpose of the *Martinez* report in prisoner litigation. (Doc. 59 at 3; Doc. 69 at 2–3). Plaintiff was clearly on notice that his case could be dismissed, and therefore this factor also supports dismissal.

Finally, the Court finds that no sanction less than dismissal with prejudice would be effective. Given that Plaintiff is proceeding *pro se*, the Court must carefully conduct its analysis and consider whether "some sanction other than dismissal [with prejudice is appropriate], so that the party does not unknowingly lose [his] right of access to the courts . . . ." *Nasious*, 492 F.3d at 1163 (quoting *Ehrenhaus*, 965 F.2d at 920 n.3). However, Plaintiff's lack of representation will not excuse his discovery abuses in this case. *See Garrett*, 425 F.3d at 841. The Court's warnings have been unsuccessful, and the Court finds that monetary sanctions would not be effective or meaningful to Plaintiff

11

as a prisoner proceeding *in forma pauperis*. *See Stine v. Lappin*, 2009 U.S. Dist. LEXIS 78373, *44 (D. Colo. 2009) (holding that lesser sanctions would not deter a *pro se* prisoner litigant). Plaintiff's conduct demonstrates that it would be pointless for the Court to consider imposing a lesser sanction than dismissal.

Having considered the Motion, Response, and Reply, the relevant law, and being otherwise fully advised, the Court finds that the aggravating factors heavily outweigh the strong judicial policy of resolving cases on their merits and that dismissal with prejudice is appropriate. *See Ehrenhaus*, 965 F.2d at 921. Plaintiff's conduct adversely affects the Defendants by keeping this lawsuit in limbo and impeding the Court's ability to evaluate the case. *See Rueb v. Zavaras*, Nos. 11-1506–08, 2013 U.S. App. LEXIS 838, *5 (10th Cir. Jan. 11, 2013) (unpublished). Plaintiff has interfered with the judicial process by flouting the court's authority. Considering all of the circumstances before it, the Court finds that dismissal of this case with prejudice is warranted.

Accordingly, pursuant to Federal Rules of Civil Procedure 37(b), the Court **RECOMMENDS** that *Defendants Deming and Laraia's Motion to Dismiss* be **GRANTED** and that Plaintiff's claims against all Defendants be **DISMISSED** with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE